[Cite as *Nationstar Mtge., L.L.C. v. Grund*, 2014-Ohio-5612.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC, | **:** | **O P I N I O N** |
| Plaintiff-Appellee, | **:** | |
| - vs - | **:** | **CASE NO. 2014-A-0024** |
| LOUIS F. GRUND, JR., et al., | **:** | |
| Defendant-Appellant. | **:** | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CV 00270.

Judgment: Affirmed.

*Robert R. Hoose,* The Law Offices of John D. Clunk Co., L.P.A., 4500 Courthouse Boulevard, Suite 400, Stow, OH 44224, and *John B. Kopf,* Thompson Hine LLP, 41 South High Street, 17th Floor, Columbus, OH 43215 (For Plaintiff-Appellee).

*Dennis M. Callahan,* 7665 Mentor Avenue, PMB #203, Mentor, OH 44060 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Louis F. Grund, Jr., appeals the summary judgment and foreclosure decree of the Ashtabula County Court of Common Pleas in favor of appellee, Nationstar Mortgage, LLC. At issue is whether the original plaintiff in this case, Aurora Bank, had standing and whether the substituted plaintiff, Nationstar, was a real party in interest. For the reasons that follow, we affirm.

**{¶2} Statement of Facts and Procedural History**

{¶3} On September 13, 2006, appellant obtained a mortgage loan from Lehman Brothers Bank to purchase real property in Ashtabula County. On that date, appellant signed a promissory note in favor of Lehman Brothers Bank in the amount of $78,000. Subsequently, Lehman Brothers Bank endorsed the note to Lehman Brothers Holdings. Thereafter, Lehman Brothers Holdings endorsed the note in blank.

{¶4} On the same date appellant obtained said mortgage loan, September 13, 2006, appellant signed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee of the lender, Lehman Brothers Bank, in order to secure the note.

{¶5} Appellant defaulted by failing to make any of the monthly payments due on the note and mortgage on and after October 1, 2011. The amount due under the loan as of October 1, 2011 in the amount of $74,349.77 was accelerated.

{¶6} On February 23, 2012, MERS assigned the mortgage to Aurora Bank by written mortgage assignment, which was duly recorded with the Ashtabula County Recorder.

{¶7} On April 5, 2012, Aurora Bank filed the complaint. Aurora Bank alleged that it was the holder of the note and that MERS had assigned the mortgage to it.

{¶8} On June 29, 2012, two months after the complaint was filed, Aurora Bank assigned the mortgage to appellee, Nationstar Mortgage, LLC. Shortly thereafter, Aurora Bank moved to substitute Nationstar as the plaintiff in this case, arguing that the note and mortgage had been assigned to Nationstar. Appellant did not object or file a

2

brief in opposition to this motion. The court granted the motion to substitute, and the case proceeded with Nationstar as the plaintiff.

{¶9} Appellant filed an answer denying the material allegations of the complaint and asserting lack of standing as an affirmative defense.

{¶10} Thereafter, Nationstar moved for summary judgment with the affidavit of Alyssa Quintanilla, Nationstar's agent, in support. Appellant filed a brief in opposition. Subsequently, the trial court entered summary judgment and a foreclosure decree in favor of Nationstar.

{¶11} Appellant appeals the trial court's judgment, asserting two assignments of error. For his first assigned error, he alleges:

{¶12} "The trial court committed prejudicial error in granting Plaintiff-Appellee Nationstar Mortgage LLC's motion for summary judgment where appellee's attorneys admitted that neither Aurora Bank FSB nor Nationstar Mortgage LLC ever owned the note, and where appellee's attorneys presented no facts or legal argument connecting either the first or subsequent plaintiff as a so-called holder with rights to enforce a promissory note."

{¶13} **Summary Judgment Principles**

{¶14} Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

{¶15} The party seeking summary judgment on the ground that the nonmoving party cannot prove his case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

{¶16} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates the nonmoving party has no evidence to support his case. *Dresher, supra*, at 293.

{¶17} If this initial burden is not met, the motion for summary judgment must be denied. *Id.* However, if the moving party meets his initial burden, the nonmoving party must then produce competent evidence showing there is a genuine issue for trial. Civ.R. 56(E). When a motion for summary judgment is made and supported as provided in Civ.R. 56, the adverse party may not rest upon the mere allegations or denials of his pleadings. The adverse party's response must set forth specific facts by affidavit or as otherwise provided by Civ.R. 56, showing that there is a genuine issue for trial. *Id.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him. *Id.*

{¶18} Since a trial court's ruling on a motion for summary judgment involves only questions of law, we conduct a de novo review of the judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.).

{¶19} **The Requirements of Standing in a Mortgage Foreclosure Action**

{¶20} In Ohio, courts of common pleas have jurisdiction over justiciable matters. Ohio Constitution, Article IV, Section 4(B). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a*

4

*Better Environment*, 523 U.S. 83, 102 (1998). Standing involves a determination of whether a party has alleged a personal stake in the outcome of the controversy to ensure the dispute will be presented in an adversarial context. *Mortgage Elec. Registration Sys., Inc. v. Petry*, 11th Dist. Portage No. 2008-P-0016, 2008-Ohio-5323, ¶18.

**{¶21}** In a mortgage foreclosure action, the mortgage lender must establish an interest in the promissory note *or* in the mortgage in order to have standing to invoke the jurisdiction of the common pleas court. *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶28. Further, because standing is required to invoke the trial court's jurisdiction, standing is determined as of the filing of the complaint. *Id.* at ¶24. This court followed *Schwartzwald* in *Fed. Home Loan Mortg. Corp. v. Rufo*, 11th Dist. Ashtabula No. 2012-A-0011, 2012-Ohio-5930, ¶18. "The requirement of an 'interest' can be met by showing an assignment of *either* the note or mortgage." (Emphasis added.) *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶24.

**{¶22}** The Supreme Court of Ohio recently clarified its holding in *Schwartzwald* in *Bank of Am., N.A. v. Kuchta,* __Ohio St.3d __, 2014-Ohio-4275. In *Kuchta*, the Court held that standing is a jurisdictional requirement in that a party's lack of standing will prevent him from invoking the court's jurisdiction over his action. *Id.* at ¶22. However, a party's ability to invoke the court's jurisdiction involves the court's jurisdiction over a particular case, not subject-matter jurisdiction. *Id.*

**{¶23}** Whether standing exists is a matter of law that we review de novo. *Bank of Am., NA v. Barber*, 11th Dist. Lake No. 2013-L-014, 2013-Ohio-4103, ¶19.

**{¶24}** **Aurora Bank's Standing Under the Uniform Commercial Code**

5

{¶25} Appellant argues there is no evidence that Aurora Bank or Nationstar ever owned the note; had any interest in the note; or had any right to enforce it. Thus, appellant argues that Aurora Bank lacked standing and Nationstar was not a real party in interest. We do not agree. R.C. 1303.31 provides in pertinent part:

{¶26} (A) "Person entitled to enforce" an instrument means any of the following persons:

{¶27} (1) The holder of the instrument; [or]

{¶28} (2) A nonholder in possession of the instrument who has the rights of a holder * * *."

{¶29} Further, R.C. 1303.22(A) provides: "An instrument is transferred when it is delivered by a person other than its [maker] for the purpose of giving to the person receiving delivery the right to enforce the instrument." Moreover, "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument * * *." R.C. 1303.22(B).

{¶30} The Second District in *LaSalle Bank Natl. Assn. v. Brown*, 2d Dist. Montgomery No. 25822, 2014-Ohio-3261, stated, "a person need not be a 'holder' of the instrument in order to be entitled to enforce it. Instead, a person can be a non-holder in possession of the instrument who has the rights of a holder. This status can be bestowed in various ways." *Id.* at ¶36. By way of explanation, the Second District in *Brown* quoted *In re Veal*, 450 B.R. 897 (Bankr.9th Dist.Ariz. 2011), as follows:

{¶31} Non-UCC law can bestow this type of status; such law may, for example, recognize various classes of successors in interest such as subrogees or administrators of decedent's estates. *See* Comment to UCC § 3-301. * * * Under the UCC, a "transfer" of a

6

negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument." UCC § 3-203(b). *LaSalle* at ¶36, quoting *Veal* at 911.

**{¶32}** As more fully discussed below, as a result of the assignment of the mortgage from MERS to Aurora Bank on February 23, 2012, the subject note was also transferred to Aurora Bank on that date. Thus, the note was transferred to Aurora Bank before the complaint was filed. Pursuant to R.C. 1303.22(B), MERS' transfer of the note vested in Aurora Bank MERS' right to enforce it. Aurora Bank thus had standing to file this action.

**{¶33}** Appellant attempts to avoid this result by arguing that Citibank owned the note when the complaint was filed. In support, appellant stated in his affidavit that on July 15, 2012, Nationstar sent three letters to him, each advising him that "the debt is owed" to Citibank, but that, effective July 1, 2012, Nationstar would be the servicing agent for the loan. While it appears that Citibank owned the note as of July 1, 2012, appellant failed to present any Civ.R. 56(C) evidence showing that Citibank owned the note prior to that date. The unauthenticated copies of documents (obtained from the internet) on which appellant relied below to show that Citibank owned the note when the complaint was filed do not satisfy the requirements of Civ.R. 56(C). Thus, they could not be considered on summary judgment. *Boop v. Moyer*, 9th Dist. Wayne No. 97CA0060, 1998 Ohio App. LEXIS 2989, *12 (June 30, 1998). As a result, there is no Civ.R. 56 evidence before us that Citibank owned the note when Aurora Bank filed the complaint.

**{¶34}** In any event, even if Citibank owned the note when the complaint was filed, Aurora Bank would still have had the right to enforce the note because the note

7

was *transferred to Aurora Bank before the complaint was filed*. Ohio's version of the Uniform Commercial Code expressly provides: "[a] person may be a 'person entitled to enforce' the instrument *even though the person is not the owner of the instrument * * *.*" R.C. 1303.31(B). (Emphasis added.)

{¶35} Ohio Appellate Districts have recognized that, "'because a promissory note is transferred through the process of negotiation, ownership is not a requirement for enforcement of the note.'" *Bank of Am., N.A. v. Merlo*, 11th Dist. Trumbull No. 2012-T-0103, 2013-Ohio-5266, ¶15, quoting *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶20. As a result, this court has held that "the holder of a note is not additionally required to plead that it is the owner of the note in its complaint." *Merlo, supra*, citing *Nat'l City Real Estate Services, LLC v. Shields*, 11th Dist. Trumbull No. 2012-T-0076, 2013-Ohio-2839, ¶21. Thus, even if Citibank owned the note when Aurora Bank filed this action, Aurora Bank, as transferee of the note, was entitled to enforce it by way of the instant action.

{¶36} Appellant's argument that Citibank's ownership of the note means that Aurora Bank was not entitled to enforce the note demonstrates a lack of understanding of the separate concepts of ownership of the note and the right to enforce it. *Merlo, supra*. Contrary to appellant's argument, Aurora Bank in its complaint did *not* allege that it was the *owner* of the note. Rather, Aurora Bank alleged that it was the *holder* of the note with the right to enforce it.

{¶37} Because Lehman Brothers Holdings endorsed the note in blank and MERS transferred the note to Aurora Bank before the complaint was filed, Aurora Bank had standing to file this action under the U.C.C. Further, because Aurora Bank

8

transferred the note to Nationstar while this action was pending, Nationstar was a real party in interest. Civ.R. 17(A); Staff Notes to Civ.R. 17.

**{¶38} Aurora Bank's Standing as the Mortgage Holder**

**{¶39}** In any event, MERS' assignment of the mortgage to Aurora Bank on February 23, 2012, *prior to the filing of the complaint*, was sufficient to transfer both the mortgage and the note to Aurora Bank. *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, ¶28. In *Dobbs*, the Fifth District stated:

> **{¶40}** The Restatement [III, Property (Mortgages)] asserts as its essential premise * * * that it is nearly always sensible to keep the mortgage and the [note] it secures in the hands of the same party. This is because in a practical sense separating the mortgage from the [note] destroys the efficacy of the mortgage, and the note becomes unsecured. The Restatement concedes on rare occasions a mortgagee will disassociate the [note] from the mortgage, but courts should reach this result only upon evidence that the parties to the transfer agreed. Far more commonly, the intent is to keep the rights combined * * *. Thus, *the Restatement [provides] that transfer of the [note] also transfers the mortgage and vice versa*. Section 5.4(b) [provides:] "* * * a transfer of a mortgage also transfers the [note] the mortgage secures unless the parties to the transfer agree otherwise." Thus, [the note] follows the mortgage if the record indicates the parties so intended. (Emphasis added.) *Dobbs, supra*, at ¶28. (Emphasis added.)

9

{¶41} The Fifth District in *Dobbs* held that the assignment of a mortgage, without an express transfer of the note, is sufficient to transfer both the mortgage and the note, if the record indicates that the parties intended to transfer both. *Id.* at ¶31.

{¶42} In addressing the provisions in the note and mortgage at issue in *Dobbs*, *supra*, which are virtually identical to those at issue here, the Fifth District held: "Because the note refers to the mortgage and the mortgage, in turn, refers to the note, we find a clear intent by the parties to keep the note and mortgage together, rather than transferring the mortgage alone." *Id.* at ¶36.

{¶43} This court followed the Fifth District's holding in *Dobbs* in *Fed. Home Loan Mortg. Corp. v. Rufo*, 11th Dist. Ashtabula No. 2012-A-0011, 2012-Ohio-5930, ¶44 ("the assignment of the mortgage, without an express transfer of the note, [is] sufficient to transfer both the mortgage and the note").

{¶44} Here, the mortgage provides that it secures to the Lender, Lehman Brothers Bank, the performance of appellant's agreements under the promissory note. Further, the note provides that the mortgage, dated the same date as the note, protects the holder of the note from loss that might result if appellant does not keep the promises made in the note. As a result, the instant note and mortgage evidenced the parties' intent to keep the instruments together, and the assignment of the mortgage to Aurora Bank on February 23, 2012, even without an express transfer of the note, was sufficient to transfer *both the mortgage and the note to Aurora Bank*. Moreover, appellant did not satisfy his reciprocal burden under Civ.R. 56 to present competent evidence that the parties intended to sever the note from the mortgage. Thus, as a matter of law, Aurora Bank had an interest in the note *and* mortgage before filing the complaint. *Dobbs, supra*. For this additional reason, Aurora Bank had standing to file this action. Further,

10

because Aurora Bank transferred the mortgage and note to Nationstar while this action was pending, Nationstar was a real party in interest.

{¶45} We therefore hold that the trial court did not err in granting summary judgment in favor of Nationstar.

{¶46} For his second assignment of error, appellant contends:

{¶47} "The trial court committed prejudicial error in granting Plaintiff-Appellee Nationstar Mortgage LLC's motion for summary judgment where direct and inferential evidence, including correspondence from Nationstar Mortgage LLC stating it was only the loan servicer and the debt was owed to Citibank N.A., Trustee, LSX Series 2006-17, showed a genuine dispute as to material facts claimed by appellee."

{¶48} Appellant argues that because Nationstar was the servicing agent of the loan and not the owner of the note, this means Nationstar had no right to enforce the note and therefore was not a real party in interest. However, as discussed above, a party need not own the note in order to enforce it. *Merlo, supra*. Moreover, this court has held that a servicing agent for a loan is entitled to enforce the note, although it is not the owner of the note. *Id*. Thus, Nationstar, as servicing agent of the loan, was entitled to enforce the note. In addition, the assignment of the mortgage from Aurora Bank to Nationstar while this action was pending resulted in the transfer of the mortgage and note to Nationstar. As a result, Nationstar was a real party in interest. The fact that Citibank owns the note is irrelevant to Nationstar's right to enforce it and does not create a genuine issue of material fact. *Merlo, supra.*

{¶49} Next, while appellant concedes that MERS assigned the mortgage to Aurora Bank and that Aurora Bank later assigned the mortgage to Nationstar, appellant attempts to avoid summary judgment by challenging the validity of these mortgage

11

assignments. However, this court rejected such challenge in *Waterfall Victoria Master Fund v. Yeager*, 11th Dist. Lake No. 2012-L-071, 2013-Ohio-3206, ¶21. In *Waterfall, a case decided post-Schwartzwald*, this court held that when a mortgagor, such as appellant, is not a party to the mortgage assignment, and his contractual obligations under the mortgage are not affected in any way by the assignment, the mortgagor lacks standing to challenge the validity of the assignment. *Id.*, citing *Deutsche Bank Natl. Trust Co. v. Rudolph*, 8th Dist. Cuyahoga No. 98383, 2012-Ohio-6141, ¶24. In *Waterfall*, this court stated that its holding was based on the recognition that "an assignment does not alter the mortgagor/debtor's obligations under the note or mortgage and that the foreclosure complaint is based on the mortgagor's default under the note and mortgage—not because of the mortgage assignment." *Id.* at ¶25.

{¶50} Appellant asserts various challenges to the mortgage assignment to Aurora Bank and the later mortgage assignment to Nationstar, arguing that, as a result, neither of these entities received a valid assignment of the mortgage. However, Aurora Bank filed the foreclosure complaint (and Nationstar has maintained it) based on appellant's default under the note and mortgage, not because of the mortgage assignments. *Waterfall, supra*, at ¶23. Appellant therefore does not have standing to challenge the mortgage assignments at issue here.

{¶51} In any event, even if appellant had standing to challenge the mortgage assignments, his arguments would still lack merit.

{¶52} First, appellant argues that Aurora Bank and Nationstar never held the note and mortgage based on information allegedly contained in certain documents appellant attached to his brief in opposition to Nationstar's motion for summary judgment. Appellant obtained these documents, marked as Exhibits D through P to his

12

brief in opposition to summary judgment, from various web blogs, internet websites, Wikipedia, and on-line newspaper articles. However, none of these documents are authenticated as required by Civ.R. 56(C). Nationstar timely objected to these documents on this basis in its reply brief. As such, they could not be considered on summary judgment and are ineffective to create a genuine issue of material fact. *See Lytle v. Columbus*, 70 Ohio App.3d 99, 104 (10th Dist.1990).

**{¶53}** Next, appellant argues that, "as indicated by the internet," Regina Lashley, who signed the mortgage assignment from MERS to Aurora Bank, has signed thousands of assignments as a MERS vice-president. Again, because this information is not authenticated as required by Civ.R. 56(C), it could not be considered on summary judgment. But even if it could, since signing these documents is apparently one of Ms. Lashley's duties, her experience in signing such documents would support, rather than diminish, her authority to sign the mortgage assignment to Aurora Bank.

**{¶54}** Appellant appears to be suggesting that Ms. Lashley is a "robo-signer," meaning she had no personal knowledge of the information in the mortgage assignment to which she attested and thus lacked authority to sign it. *Barber*, *supra*, at ¶22. However, appellant failed to produce any evidence that Ms. Lashley lacked authority to sign the assignment or that she was a robo-signer. Thus, appellant failed to create a genuine issue of material fact regarding her authority to sign the assignment. *Id.*

**{¶55}** Next, appellant argues that because the mortgage assignment from MERS to Aurora Bank states that an individual in Nebraska prepared the instrument, "[t]his provides cover to appellee's former attorneys." Further, appellant argues the name and address of appellee's former attorneys were included on the mortgage assignment in order "to mislead the County Recorder's Office into believing the

13

instrument complies with the Ohio Revised Code." Whatever appellant is attempting to suggest by these arguments, which is far from clear, the arguments are not supported by any evidence and are thus merely speculative and ineffective to avoid summary judgment. Moreover, appellant does not reference any case law authority holding that including these items in a mortgage assignment would affect its validity.

{¶56} Next, appellant suggests the mortgage assignment from Aurora Bank to Nationstar was also signed by a robo-signer and is thus invalid. However, because appellant failed to present any evidence that the signer of this instrument was a robo-signer or that she lacked authority to sign it, appellant failed to create a genuine issue of material fact regarding her authority to sign it.

{¶57} Thus, even if appellant had standing to assert these challenges to the mortgage assignments at issue here, because none is supported by any evidence and each is merely conclusory and speculative, they are ineffective to challenge the validity of the assignments.

{¶58} Further, appellant argues that because Aurora Bank named MERS as a defendant, this proves that Ms. Lashley, the officer of MERS who signed the mortgage assignment on MERS' behalf, did not have authority to do so. Once again, because this argument challenges the validity of a mortgage assignment, appellant lacks standing to make it. In any event, the argument makes no sense. The judicial report filed in this case shows that MERS had an interest in the property as a mortgage holder. Thus, Aurora Bank had legitimate grounds to name MERS as a defendant. Further, the mere fact that MERS was named as a defendant in this action does not prove that Ms. Lashley lacked authority to sign the mortgage assignment to Aurora Bank.

14

{¶59} Finally, appellant has not presented any evidence supporting his argument that Aurora Bank's former attorneys have "misrepresented" that Aurora Bank and Nationstar were prior holders of the mortgage and note. In fact, by virtue of the assignment of the mortgage to Aurora Bank and later to Nationstar, these two entities have in fact held both the note and the mortgage. Further, contrary to appellant's argument, there is no evidence that Aurora Bank's attorneys filed "two false assignments of mortgages as part of the misrepresentation." In fact, the evidence shows that both assignments were properly executed by authorized representatives of MERS and Aurora Bank.

{¶60} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.